**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **HERBERT DIGGS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PERCY MYERS, and**<br>**BOB BLUM,**<br><br>**Defendants.** | **Case No. 25-cv-00157-SPM** |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Herbert Diggs an inmate of the Illinois Department of Corrections (IDOC), initiated this action pursuant to 42 U.S.C. § 1983 for violations his constitutional rights. In the Complaint (Doc. 1), Plaintiff asserts that he was not provided with adequate medical care after breaking two of his fingers. On October 27, 2025, Defendant Dr. Percy Myers filed a Motion for Summary Judgment seeking dismissal of this case based on Plaintiff's failure to exhaust his administrative remedies prior to initiating this lawsuit, which is required by the Prison Litigation Reform Act, 42 U.S.C. §1997(e). (Doc. 24). After being granted an extension, Plaintiff timely filed his response in opposition to the Motion on February 9, 2026. (Doc. 34, 35).

Defendant Dr. Myers then filed a reply brief arguing in part that Plaintiff failed to comply with Federal Rules of Civil Procedure 56(c) and (e) and Local Rule 56.1(b) by not opposing each asserted fact with a reference to the record. (Doc. 36). Dr. Myers points out that Plaintiff only disputes the facts contained in paragraphs three and seven of the statement of undisputed facts and does not provide citations to the record to support his assertions. Dr. Myers argues the Court should therefore deem Plaintiff's asserted facts as undisputed and grant summary judgment. (Doc. 36).

Plaintiff filed a motion seeking to amend his response to correct these errors and provide citations to the record to support his assertions of fact. (Doc. 37).

The Motion to Amend the Response filed by Plaintiff is denied. (Doc. 37). There are two grievances relevant to Plaintiff's allegations in the Complaint, and the parties dispute whether only one of those grievances, Emergency Grievance #1945-06-23, contains sufficient information to properly grieve Plaintiff's Eighth Amendment claim against Dr. Myers. (*See* Doc. 35, p. 9-11). The record on summary judgment in this case is therefore relatively short. It is clear that Plaintiff is relying on the substance of Emergency Grievance #1945-06-23 found at Doc. 28, p. 46-47 in opposing the Motion for Summary Judgment. Thus, even though Plaintiff did not properly cite to the record in disputing and asserting facts, the Court nevertheless elects to consider his asserted facts in light of his *pro se* status. There is no need for Plaintiff to amend his response, and the Motion to Amend is **DENIED**. (Doc. 37). The Motion for Summary Judgment is therefore now fully briefed and before the Court.

## Allegations in the Complaint

In the Complaint (Doc. 1), Plaintiff alleges that on May 21, 2023, while housed at Pinckneyville Correctional Center, he injured his hand when he punched a door. That same day, he was seen by a nurse who noted swelling and applied an ace wrap. He asserts that he was not referred to be seen by the doctor "at that time. Or any another time." (*Id.* at p. 7). On May 24, Plaintiff was treated by Nurse Practitioner Blum. Plaintiff asserts that Blum did not give him any medical treatment for his hand. According to Plaintiff, Blum told Plaintiff that there was nothing he could do until the swelling reduced.

From May 24 through May 29, 2023, while Plaintiff was receiving treatment for hypertension, he repeatedly showed nurses his hand and asked for x-rays to be taken. Plaintiff

asserts that nurses told him that his hand was broken and that they would put him on the list for x-rays, but they did not.

Plaintiff saw Blum a second time on May 30, 2023, and Blum ordered x-rays. Plaintiff asserts that the medical treatment he received from Blum during this encounter was again deficient, and Blum did not give him a splint. The x-rays were taken on June 9, 2023, twenty days after the initial injury to his hand. Plaintiff states that he saw Dr. Myers that same day and showed Dr. Myers his hand. According to Plaintiff, Dr. Myers told Plaintiff that there was nothing he could do until he reviewed the x-ray results. Dr. Myers also denied Plaintiff a splint.

On June 15, 2023, Plaintiff asserts he had a third appointment with Blum. Blum diagnosed Plaintiff as having two broken fingers, and Blum ordered an appointment with an orthopedic doctor. By this time, Plaintiff asserts that his hand had started to "heal deformed."

Plaintiff states he was treated by an orthopedic doctor on October 5, 2023. During the appointment, the doctor explained that if he had treated Plaintiff earlier, he could have set the two fingers. The doctor informed Plaintiff it was now too late to perform surgery because Plaintiff's hand had completely healed. Plaintiff also asserts that the doctor recommended physical therapy. Plaintiff states that following the appointment with the orthopedic doctor he was referred to see Dr. Myers, but he has not been treated by Dr. Myers for his hand.

Plaintiff had an appointment with Blum on October 16, 2023. At the appointment, Blum told Plaintiff that he did not have Plaintiff's chart. Plaintiff alleges that he informed Blum that the orthopedic specialist had recommended physical therapy. Blum told Plaintiff he would order physical therapy, but he did not. According to Plaintiff, physical therapy was finally ordered by another medical provider several months later in January 2024.

Following a merit review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff is

currently proceeding on an Eighth Amendment claim against Blum and Myers for delaying and/or denying Plaintiff constitutionally adequate medical care for his hand. (Doc. 12).

## LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (a "judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008);[1] *Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014). Where there is no disputed issue of fact, a hearing is not necessary.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that no "action shall be

[1] The Court's ability to conduct *Pavey* hearings for evidentiary disputes on exhaustion was altered slightly by the Supreme Court's holding in *Perttu v. Richards*, 605 U.S. 460 (2025) (holding that if a factual dispute on exhaustion is intertwined with a factual dispute that goes to the merits of the underlying substantive claim, then a jury trial is required on the intertwined issue(s)). In the present case, there is no *Perttu* intertwinement issue.

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Furthermore, exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

As an inmate in the custody of IDOC, Plaintiff was required to follow the grievance procedure laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures direct an inmate is to file a grievance first with the Counselor within sixty days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are sent to a Grievance Officer, and then to the Chief Administrative Officer. *See* 20 ILL. ADMIN. CODE §§ 504.820(a), 504.830. The Chief Administrative Officer reviews the findings and recommendations of the Grievance Officer and issues a written decision to the inmate. 20 ILL. ADMIN. CODE §504.830(e). If the inmate is not satisfied with the response, he can file an appeal with the Administrative Review Board (ARB). *See* 20 ILL. ADMIN. CODE § 504.850(a). Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023–24.

## ANALYSIS

Based on the briefings, there is one grievance at issue: Emergency Grievance #1945-06-23. Defendant Dr. Myers does not dispute that Plaintiff fully followed grievance procedures in submitting and appealing the grievance. The issue before the Court is whether the grievance contains the requisite factual details concerning Plaintiff's allegations against Dr. Myers to exhaust Plaintiff's Eighth Amendment claim.

In Emergency Grievance #1945-06-23, Plaintiff writes that his need for medical treatment is being "disregarded" in violation of his constitutional rights. (Doc. 28, p. 46). He states that he broke his hand on May 21, 2023, and was rushed to the hospital. (*Id.*). When he arrived at the hospital, he was told that there was no one there to treat him, but he was provided with pain pills and an ace wrap. (*Id.* at p. 47). Plaintiff asserts he was instructed to return the following day. (*Id.*). Plaintiff writes that the next day, May 22, a nurse told Plaintiff that he would place Plaintiff "on the list to see the doctor." (*Id.*). Plaintiff again saw a nurse on May 23, "on the treatment line," who told him she would put him on the x-ray list. (*Id.*). Plaintiff was then treated by Nurse Practitioner Blum on May 24 for an allergic reaction. (*Id.*). He states that he told Blum about his hand, and Blum responded that he could not do anything until the swelling reduced. (*Id.*). Plaintiff asserts he was treated by Blum again on May 30, and during this appointment, Blum ordered x-rays. (*Id.*). He recounts that x-rays were taken on June 9, and on June 15, he was seen by Blum. (*Id.*). Blum confirmed that Plaintiff's hand was broken, and he told Plaintiff he would make an appointment for Plaintiff to see an orthopedic doctor. (*Id.*). Plaintiff grieves that it has been thirty-two days since he broke his hand, he is in constant pain, and the pain is getting worse. (*Id.*). Plaintiff states that he needs surgery to fix his broken hand. (*Id.* at p. 46).

Plaintiff argues that Emergency Grievance #1945-06-23 not only properly identifies Dr.

Myers but also meets the primary purpose of the grievance process, which "is to alert prison officials to a problem and not to provide personal notice to a particular official that they may be sued." (Doc. 35, p. 7) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). In support of his argument, Plaintiff points to the line in the grievance in which he recounts that the nurse on May 22, 2023, told him that he would be put "on the list to see the doctor." (Doc. 35, p. 9). Plaintiff asserts that the "doctor" referred to by the nurse was Dr. Myers, the "list was the doctor's call line," but "Dr. Myers never called [him] over to treat [his] broken hand." (*Id.*). Plaintiff argues that based on this grievance prison officials had a fair opportunity to address his complaints that Dr. Myers was not providing him care. He asserts that Emergency Grievance #1945-06-23 serves to exhaust his claim against Dr. Myers, and the Motion for Summary Judgment should be dismissed.

As Plaintiff states, the grievance process is not intended to provide individual notice to each defendant who might be sued later, and a grievance is not "per se inadequate simply because an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 219. The primary purpose of exhaustion "is to alert the state to the problem and invite corrective action," *Turley v. Rednour*, 729 F.3d 645, 649–50 (7th Cir. 2013) (internal citations and quotations omitted). Inmates, however, must still exhaust according to prison rules, and "grievances must contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). As discussed above, the grievance procedures in Illinois provide instruction on the level of specificity that an inmate is to include in a grievance, including a name, or at least a description of the persons involved. 20 ILL. ADMIN. CODE § 504.810(c). *See also Santiago v. Anderson*, 496 F. App'x 630, 637 (7th Cir. 2012) ("Since May 2003 the grievance procedures applicable to Illinois prisons have included a particularity requirement[.]"). Emergency Grievance #1945-06-23 does not contain the level of detail necessary to meet the grievance procedures'

specificity requirements as to Dr. Myers.

Plaintiff grieves that he was treated for his hand injury by three different unidentified nurses and Nurse Practitioner Blum on three different occasions from May 21 through June 21, 2023. (Doc. 28, p. 46-47). He requests to have surgery to fix his broken hand. (*Id.* at p. 46). A plain reading of the grievance makes clear that the subjects of his complaint are the nurses and Blum for ineffective and delayed care that has resulted in ongoing pain. There is no indication that he was treated by or unhappy with Dr. Myers. The statement that a nurse told Plaintiff that Plaintiff would be placed on the "list to see the doctor," does not convey that Plaintiff intended to complain about the doctor's failure to "call [him] over to treat [his] broken hand." (Doc. 35, p. 9). Rather, it communicates dissatisfaction with nursing staff for failing to properly process his referral. In fact, in the Complaint, Plaintiff asserts that he was not referred to see the doctor by the nurses at any time. (Doc. 1, p. 7). Thus, it "is unlikely that prison officials would be put on notice that Plaintiff was complaining of a doctor's treatment" or lack thereof by this statement made by the nurse. *Clemons v. Zahtz*, No. 3:20-CV-50330, 2021 WL 3910765, at *7 (N.D. Ill. Sept. 1, 2021). Because Dr. Myers is not mentioned or described in any way in Emergency Grievance #1945-06-23, it cannot serve to exhaust Plaintiff's Eighth Amendment claim. The Motion for Summary Judgment is granted.

## DISPOSITION

For the reasons provided, the Motion for Permission to Amend the Response filed by Plaintiff Diggs is **DENIED**. (Doc. 37). The Motion for Summary Judgment filed by Defendant Percy Myers is **GRANTED**. (Doc. 24).

The claim against Defendant Myers (Count 1) is **DISMISSED without prejudice** for Plaintiff's failure to exhaust. The Clerk of Court is **DIRECTED** to terminate Myers as a party on

the docket and enter judgment accordingly at the end of this litigation. This case shall proceed against Defendant Blum only.

The stay on merits discovery is **LIFTED**. The parties can commence with discovery on the merits. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: September 21, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**